Good afternoon, your honors. Patrick Brown appearing for the appellant, Jack Reed. Your honors, it's clear from the record in this case that at the trial, the jury was confused with respect to the issue of whether or not there was more than one conspiracy. We know this from the series of notes that the jury passed up while they were engaged in their deliberations. Did it matter? Judge, we believe that it does, your honor, because recognizing as the government's pointed out and their point's well taken, that generally if you have a conspiracy like this where you've got one individual running through it, single defendant trial, that usually it's a non-issue. But respectfully, your honor, we believe it is an issue in this case because of the fact that it'd be pretty hard to deny that the jury was confused. And the nature of the question showed precisely what their confusion was. Namely, there was this period of time when Mr. Reed was incarcerated for three years when clearly he was out of the business, if you will. And this Walker, the other individual who it's alleged he conspired with before he was incarcerated, stated two things. Not that there was no conspiracy, but there was also approximately one year out of that three-year period when he was in Atlanta and he wasn't selling drugs at all. So clearly there was a, if there was an earlier conspiracy, it had to have stopped. And also, that first conspiracy, they were selling $20 quantities of drugs and then later on there were these allegations that there were all these other individuals involved, kilogram quantities and all the rest of it. So you've got the two, we would submit two conspiracies. What is the fundamental theory of why this is multiple or two conspiracies? Is it the break in time that arose as a result of the prison sentence or is it the change in scope? It's the prison sentence, Your Honor. But I just point out that there is that difference too in terms of what the, you could say the scope, but it's the time. More successful over time. It's the temporal difference. But to go to your question, Your Honor, I think there's a difference here in this case than you see in the single defendant double conspiracy issue type cases in this regard. Here we've got a question, which conspiracy did the jury convict on? Did they convict on the first conspiracy, the second conspiracy, or both of them? And did all 12 jurors convict or on everything? Or is it a situation where six jurors convicted on the first one and maybe six convicted on the second one? And then that goes to the drug quantity. To go to your question, Your Honor, if some of the jurors only convicted on the first conspiracy with the $20 quantities and then some other jurors convicted on the second conspiracy . . . How do you get around? I know where you're going, but how do you get around the case law, case after case after case, in which we have said that single multiple conspiracy analysis does not apply to the trial of a single defendant? Well, I think, Judge, when I looked at those cases . . . You agree that those cases seem to be a hurdle for you? They say what you just said, Your Honor. There's no question about that. But when you look at them, they seem like they're concerned more with shorter periods of time situation where you've got the single conspiracy. Here where you've got, going from the 1990s up to 2012, with this three-year time split, I'm just thinking that there's a real issue here of what did he get convicted of? Was it really a unanimous verdict? Or were the cases split, some on one, some on the other? Then how do you get to the drug weight? What if there wasn't a unanimous vote that the first conspiracy with the $20 packages is what he was guilty of? Can you identify any evidence that would not have been admitted, or that shouldn't have been admitted, if the conspiracy charge had been drafted just to cover the post-2008 cocaine trafficking? Well, if . . . Is there anything else that seems to be able to come in as background for the jury to understand the relationship between Mr. Walker and Mr. Reed and so on? It may have, Your Honor. I understand your point. I guess the concern that I have, Judge, is when you look at those jury notes, the way the jurors kept going back to the earlier period and the subsequent period, and there was the one note there, the note in and of itself is very confusing, where they make a reference to, is it like a rainy day, or is it like a passing the baton? Is it more important what the note said, or what the judge instructed in response to the note? Well, what the judge instructed in response to the note is, I guess, all we can ask for. The jurors, they come up with the notes they come up with. But the judge persisted in talking about the conspiracy charge in the indictment when the jurors seemed to be saying which one. Our position would be that question was never adequately answered by the trial court because it wasn't responsive to what the jurors were asking. That's our point, Your Honors. I would rely on brief for the other issues. Thank you very much, Mr. Brown. Ms. Richards? May it please the Court, Monica Richards, United States of America, on this appeal. I disagree. I believe that the way that the jurors' notes were written did relate to time. The first note related to what does continuing to mean, that's in the record at page A573, and then the note regarding the hypothetical that they posed, or the scenario that they posed, is continue to act for the duration of the conspiracy, like, and then they continued. So their question really related to time, not who was involved, or when it started or stopped, or what happened with regard to the scope of the conspiracy. Really, reading those two notes was, does it mean that we have to have evidence that in 1990 he was dealing cocaine and in 2012 he was dealing cocaine, and for the duration continuously throughout that he was doing it? When we know there was a break in the action as far as Mr. Reed was concerned when he was in jail, but he picked up right where he left off. There was no indication that he stopped, or had no, that he stopped and he said, I'm no longer involved in this matter. He went right back to it with his cousin, who by that point was significantly older. He was 16 when they started. Now he's been doing a little bit as he could while his cousin was in jail, and came back right to it with Mr. Reed supplying in the role of supplier, and that was a role that Mr. Walker then also developed into. But that doesn't change, none of that testimony, none of that evidence is any indication that Mr. Reed himself, other than the fact that he was caught and put in jail, was out of it for a minute there. So same thing as if somebody had moved away, same thing as if somebody had laid low, that's in a Fourth Circuit case, they wanted to protect their identity or they wanted to do something to go underground for a little while, same thing, it doesn't show any conclusive evidence that they withdrew from the conspiracy. May I ask you about, although Mr. Brown didn't raise it, the forfeiture issue? Sure. With regard to the forfeiture, if I could ask which aspect specifically, the money or the properties, Your Honor? The properties. So as I understand it, there's a question about whether a substantial connection was proven between the trafficking activity and the two properties, the 58, the common residence, and 23 Sunrise, 23 Sunrise Boulevard. Okay, so the statute here that we're dealing with isn't the administrative forfeiture statute, and 853A is the property, 853A2 specifically, and that doesn't require as much. That requires that it was used to commit or facilitate, and I quoted the statute specifically for that matter in my brief at page, I'm sorry, it's in there, at page 36. So some circuits, Ms. Richards, have looked to 881, the civil analog, to import a substantial connection requirement for purposes of assessing an 853 criminal forfeiture action. You're familiar with that? Yes. What is the government's view about that? Well, my means of addressing it here, Your Honor, is that would be, as Your Honor pointed out, there would be new law in this circuit, but that here this wouldn't be the case to do it, because here we have a substantial connection. Here, under no matter what standard we're looking at, we have the facilities, the homes being used to commit transactions, to bundle money, to discuss further activity, so we don't have the concern that comes up in that administrative context under 881. Sorry. Well, two questions. First, do you know what other U.S. Attorney's Offices or the Department of Justice, what their position has been in connection with that particular question, outside of the circuit? No. Okay. Second, why wouldn't it be fruitful for us to have some, given what you just said, that there is no clear case law on this, have some binding precedential opinion on that issue? Here, the manner in which it's being raised now means that it wasn't addressed below in the district court, so I don't see that that's possible here, unless I'm misunderstanding. It wasn't addressed at all? That specific nexus connection, substantial connection? I don't believe so. It came up in the briefing here. And your point, in any event, is that we don't really have to address it because the government satisfied, regardless of the standard, that it was satisfied, so there was a substantial connection between the trafficking activity and both residences. Is that right? Correct. Page 50 of our brief, Your Honor, that was with assistance from our forfeiture unit in the office when I responded to this point in the brief, that the First Circuit did the same in United States v. Heldman. 853 is precise language, but stated identical language in the civil forfeiture requires substantial connection, but no determination here because whatever the exact degree of connection required, the evidence provided in the district court in this case supported the forfeiture, so that wouldn't be unprecedented. And on top of that, there was no argument about this. This was never really raised in this way. I don't believe it was. I hope I'm not misspeaking, and I guess I could leave that to Mr. Brown, but I wasn't trial counsel. Well, you were at the sentencing, though. It wasn't trial counsel. Do you want me to respond? There's no further questions otherwise for me? He brought us as the president. Thank you. We did raise the nexus issue. I came in at sentencing, and that was addressed at the sentencing. It was in our papers. I shouldn't say it was. It was in the papers, and the government also produced witnesses on that issue, and we argued about that. Perhaps we can have supplemental letter briefs from each of you on this. Today is Tuesday. If we can do it by the end of the week, just to identify aspects of the record that deal with these concerns. Okay. Fine, Judge. No more than four pages long, double-spaced. Thank you, Judge. Thank you. Transmitted by Friday at 12 noon. Electronically filed? Yes, absolutely, with copies to opposing counsel. And you can discuss it before then. You might be able to join together in one document or a de facto stipulation regarding the record. And if you need to attach any part of the record that's not in the appendix, that would be much appreciated. Thank you, Judge. Thank you very much. It is so ordered.